### MARTIN DUNN vs. THE HARTFORD & WETHERSFIELD HORSE RAILROAD COMPANY.

*C*, an employé of the defendants, a corporation, who had been sent with an officer to find property of one *M* to attach upon a note which they held against him, soon after settled the claim with *M* by taking a horse at an agreed price and a bill of sale to himself of a wagon, which latter he was to sell, retain $50 of the proceeds for the defendants, and return the balance to *M*. *C* took the wagon into his possession, delivered the horse to the defendants and paid them the $50 which he was to get from the sale of the wagon; at the same time informing the president of the company of the particulars of the arrangement. The president expressed no disapproval, but withdrew the suit that had been instituted and delivered the note of *M* to *C*. *C* acted in the whole matter for the benefit of the defendants. The wagon proved to be the property of *D*, who demanded it of the defendants; they replied that they

knew nothing of it, and he sued them in trover. Held that the acts of *C* would be regarded in law as ratified by the defendants, and his possession of the wagon as the possession of their agent.

TROVER for a wagon; brought to the Court of Common Pleas of Hartford County, and tried on the general issue, before *McManus, J.* Facts found and judgment rendered for the plaintiff, and motion in error by the defendants. The case is fully stated in the opinion.

*H. C. Robinson* and *S. C. Dunham,* for the plaintiffs in error.

*C. J. Cole,* for the defendant in error.

FOSTER, J. That the property sued for in this case belonged to the plaintiff, and was unlawfully withheld from him, is not disputed. The defendants however deny all liability, on the ground, 1st, that the acts by which the plaintiff has been deprived of his property were not done by any authorized agent of theirs; and 2d, that in any event, there is no sufficient evidence of a conversion of the property by them to support the suit.

The wagon which is the subject of controversy was in the possession of one Mooney, and used by him with the consent of the plaintiff, the owner, in the month of October, 1874. Mooney was indebted to the defendants by note in the sum of $100. The defendants, by their president, procured a writ of attachment against Mooney to collect the debt, and placed the same in the hands of a constable for service. One Crilley, an employé of the defendants, was directed by the president to take a horse and carriage and drive the constable wherever it might be necessary to go in the service of the writ, and to point out to him a horse of Mooney's, known to Crilley, that he might be attached. The constable was directed to act under Crilley's directions. The horse was attached and placed in the defendants' stables, and subsequently, on the same day, Crilley and Mooney met together and arranged terms of settlement of the claim of the defendants against Mooney. The defendants were to take the

horse they had attached at $50. Moody was to give a bill of sale of the wagon, and deliver it to Crilley, who was to sell it to the best advantage, retain $50 of the proceeds of the sale, and pay over the balance to Mooney. Mooney's note was to be canceled, and the suit withdrawn. The bill of sale of the wagon was made, and the wagon was delivered to Crilley, who reported his doings immediately to the defendants' president, at the same time paying him $50. Mooney's note was then given up to Crilley, who has since held the same. The defendants took possession of the horse, and caused the suit to be withdrawn before the return day of the writ. Crilley intended to act and did act solely for the defendants' benefit, and had no interest whatever except as a servant of the defendants. The president of the company was informed by Crilley, at the time, of all the particulars of the transaction, and has never expressed any disapproval. Crilley has spoken to several parties, creditors of Mooney, since the taking of the wagon, as if it were in the defendants' possession, and that it would be delivered up on the payment of $50. The plaintiff made demand of the defendants for the wagon, prior to bringing this suit, and was told by their president, of whom the demand was made, that he knew nothing of it. The wagon was then in Crilley's possession, but not on the defendants' premises.

The court below found that these facts constituted an agency on Crilley's part, and a ratification of his acts by the defendants, and that the law will imply the same from the facts. Judgment was thereupon rendered for the plaintiff, that he recover of the defendants the value of the wagon, $135, and his costs of suit.

Is this judgment erroneous?

Mooney must have acted in bad faith in selling this wagon, for he knew it was not his, and that he had no right to sell it. Crilley may have acted in good faith, and supposed Mooney to be the owner of the wagon. However that may have been, he got no title to it, for Mooney had none to convey. The defendants are the parties who derive whatever of benefit is derivable from the transaction; they only had an

interest in the matter. Crilley had none, and he acted exclusively in their behalf.

We see no cause why we should view with any especial favor merely technical reasons for turning the plaintiff round to seek his remedy against Crilley or Mooney, even if they might be liable, as doubtless they are. The facts found seem to us abundantly sufficient to sustain the judgment.

There is no error.

In this opinion the other judges concurred.